633 So.2d 707 (1993)
Michael O'QUINN
v.
POWER HOUSE SERVICES, INC., et al., American Empire Surplus Insurance Co., d/b/a American Empire Insurance Co., J. Pat Price, J.H. Jenkins, CNA Insurance Companies and Jenkins Construction Co.
No. 93 CA 0277.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
*708 Mark R. Wolfe, New Orleans, for plaintiff-appellant.
Robert J. Young, Jr., Donald T. Giglio, New Orleans, Joseph A. Schittone, Jr., John E. Cox, Eugene W. McGehee, Baton Rouge, Jerome K. Lipsich, New Orleans, for defendants.
Before FOIL, PITCHER and PARRO, JJ.
PITCHER, Judge.
Michael O'Quinn (plaintiff), appeals from a trial court judgment granting the motions for summary judgment filed by defendants, J.H. Jenkins, Jr. (Jenkins, Jr.), Continental Casualty Insurance Company (Continental), and Jenkins Construction Company (Jenkins Construction). The trial court found that these defendants were immune from liability pursuant to LSA-R.S. 9:2791 and 2795. We reverse.

FACTS
Plaintiff was a resident patient at Power House Services, Inc. (Power House), a halfway house for individuals suffering from chemical dependency. On or about March 27, 1988, plaintiff attended an outing with the other resident patients of Power House. This outing took place on property owned by Jenkins, Jr. This property covers approximately 500 acres, although Jenkins, Jr. stated that he is the sole owner of only 200 of the 500 acres. On this property is a camp, described as a building with 1000-1500 square feet of living area, with one large bedroom and two bathrooms. The camp also has a screened-in porch and a carport, with spaces for two cars. The camp has lighting, central air conditioning, a telephone, and a paved driveway leading to it.
Also on this property is a manmade lake which is allegedly surrounded by a cement product referred to as "rip-rap." This lake, along with the camp, is fenced in and, apparently, kept locked at all times.
On the day of this outing, plaintiff stated that he arrived at the site with other resident patients and began to fish. According to plaintiff, after observing other resident patients swimming in the lake, he borrowed a pair of swimming trunks and dove into the *709 lake. Plaintiff stated that he hit his head on "something hard." Plaintiff suffered a broken neck, which rendered him a quadriplegic.
Plaintiff filed a suit for personal injuries and named as defendants, Jenkins, Jr., Continental (the liability insurer of Jenkins, Jr.), and Jenkins Construction.[1] The petition alleged that Jenkins, Jr. and/or Jenkins Construction were the owners of the property in question. The petition also alleged that Jenkins, Jr. or Jenkins Construction, or both, were the party responsible for placing concrete at the bottom of the lake.
Jenkins Construction filed a Motion for Summary Judgment. In support of this motion, Jenkins Construction alleged that plaintiff had (1) no information showing that Jenkins Construction was responsible for placing concrete in or around the pond and (2) no information that the company owned, leased or operated the premises on which the pond was located.
Jenkins, Jr. and Continental also filed a Motion For Summary Judgment. In support of their motion, Jenkins, Jr. and Continental alleged that they were immune from liability under LSA-R.S. 9:2791[2] and 2795[3], commonly *710 referred to as the recreational use statutes.
In granting the motions for summary judgment in favor of these three defendants, the trial court found that (1) defendants owned and maintained the property; (2) the property was rural and primarily undeveloped; and (3) plaintiff was engaged in the act of swimming in a lake or pond at time of injury. It then determined that the key question to be answered was the property's "availability to the public." The court found that this property was available to the public and thus, the movers were immune from liability.
Plaintiff filed a Motion For New Trial which was denied by the trial court.
Plaintiff appealed the trial court's ruling and sets forth the following assignments of error:
1.
The trial court erred in granting summary judgment to defendants J.H. Jenkins, Jr., Continental Casualty Company, and Jenkins Construction Company by finding them immune by operation of the Recreational Use Statutes, LSA-R.S. 9:2791 and 9:2795, from the tort claim of Michael O'Quinn.
2.
The trial court erred in granting summary judgment to defendants J.H. Jenkins, Jr., Continental Casualty Company, and Jenkins Construction Company as to those causes of action presented by Michael O'Quinn which lie beyond the scope of the Recreational Use Statutes, LSA-R.S. 9:2791 and 9:2795.
3.
The trial court erred by not finding the Recreational Use Statutes, LSA-R.S. 9:2791 and 2795, to be unconstitutional.

ASSIGNMENT OF ERROR NUMBER ONE
Generally, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Kerwin v. Nu-Way Construction Service, Inc., 451 So.2d 1193, 1194 (La.App. 5th Cir.), writ denied, 457 So.2d 11 (La.1984); Landry v. Brandy, 389 So.2d 93, 95 (La.App. 4th Cir.1980); Cooper v. Anderson, 385 So.2d 1257, 1258 (La.App. 4th Cir.), writ denied, 393 So.2d 738 (La.1980). The burden is upon the mover for summary judgment to show that no genuine issues of material fact exist, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Frazier v. Freeman, 481 So.2d 184, 186 (La.App. 1st Cir.1985); Asian International, Ltd. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 435 So.2d 1058, 1063 (La.App. 1st Cir.1983).
Summary judgments are not favored, and any reasonable doubt should be resolved against the mover. Dupuy v. Gonday, 450 So.2d 1014, 1015 (La.App. 1st Cir.1984). In determining whether material issues have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980); Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979).
LSA-R.S. 9:2791 and 2795 were originally enacted by Act 248 of 1964 and Act 615 of 1975, respectively. Both acts intended to provide a limitation of tortious liability of landowners who allowed their property to be used for recreational purposes. Peterson v. Western World Insurance Company, 536 *711 So.2d 639, 643 (La.App. 1st Cir.1988), writ denied, 541 So.2d 858 (La.1989). The stated goal of the recreational use statutes is:
[T]o encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.
Monteville v. Terrebonne Parish Consolidated Government, 567 So.2d 1097, 1101 (La. 1990).
The Louisiana Supreme Court, in Keelen v. State, Department of Culture, Recreation and Tourism, 463 So.2d 1287, 1290 (La.1985) stated:
The use of the language `land and water areas' is suggestive of open and undeveloped expanses of property. Furthermore, the type of recreational activities enumerated in both statuteshunting, fishing, trapping, camping, nature study, etc.can normally be accommodated only on large tracts or areas of natural and undeveloped lands located in thinly-populated rural or semi-rural locales. Specification of these types of activities suggests a policy that would encourage landowners to keep their property in a natural, open and environmentally wholesome state. We would stray from this goal were we to construe the statutes to grant a blanket immunity to landowners without regard to the characteristics of their property. Thus, we conclude that the legislature intended to confer immunity upon owners of undeveloped, nonresidential rural or semi-rural land areas. The size, naturalness and remoteness or insulation from populated areas all attribute to the categorization of property as rural or semi-rural.
The trial court's conclusion that the property in question is rural and primarily undeveloped is not supported by the record. The evidence presented in support of the motion for summary judgment as to the character of this property establishes only that the property may encompass approximately 500 acres. However, Jenkins, Jr. stated that he is the sole owner of only 200 acres of this tract. Additionally, the evidence reflects that a camp and an eight acre lake are located on the 500 acres and are surrounded by a fence.
The question of whether this property is non-residential, unimproved rural or semi-rural property must be answered by a review of facts not presently before us. See Holder v. Louisiana Parks Service, Inc., 493 So.2d 275, 278 (La.App. 3rd Cir.1986). Because there remains a material issue of fact as to whether the nature of this property qualifies it for immunity under the recreational use statutes, summary judgment is not appropriate.
Defendants argue that even if the recreational use statutes do not apply, they are still entitled to summary judgment because they owed no duty to the plaintiff. Defendants argue that it is the primary duty of the swimmer or diver to ascertain the safety of such inherently dangerous activities.[4] In rejecting a similar "no duty" argument under the facts of Socorro v. City of New Orleans, 579 So.2d 931, 941-942 (La.1991), the Louisiana Supreme Court stated:
[C]are should be taken to note that we maintain our policy that "the duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and that a potentially dangerous condition that should be obvious to all comers is not, in all instances, unreasonably dangerous." ... Therefore, under duty/risk analysis, if the facts of a particular case warrant, there could be a finding that a defendant owed no duty under the circumstances, or on the other hand, that a plaintiff was 100% at fault. (Citations omitted).
In determining negligence liability, the courts of this state have adopted a duty-risk analysis approach. See Dixie Drive It Yourself System New Orleans Co., Inc. v. American Beverage Company, 242 La. 471, *712 137 So.2d 298, 304 (1962). To hold the defendant liable for his negligence, the following questions must be answered in the affirmative:
(1) Was the conduct in question a cause-in-fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Were the requisite duties breached?
(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
Mart v. Hill, 505 So.2d 1120, 1122 (La.1987).
The courts have consistently held that a landowner owes a plaintiff a duty to discover any unreasonably dangerous conditions and to either correct the conditions or warn of its existence. Socorro v. City of New Orleans, 579 So.2d at 939. Whether a particular risk is unreasonable is a difficult question which requires a balance of the intended benefit of the thing with its potential for harm and the cost of prevention. The ease of association between the duty owed and the risk encountered is a proper focus of inquiry in finding the existence of a duty. Socorro v. City of New Orleans, 579 So.2d at 939.
Based on the record before us, we cannot say as a matter of law that Jenkins, Jr. owed no duty to those who came onto his property to prevent the risks encompassed by the facts of this case. The record raises an issue of material fact in that it has not been established that there was "rip rap" on the bottom of this lake. The existence of this factual question precludes summary judgment.

ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE
Because we have concluded that Assignment of Error Number One has merit, we pretermit discussion of the remaining assignments of error.

CONCLUSION
Based on the foregoing reasons, the judgment of the trial court granting the motions for summary judgment in favor of Jenkins, Jr., Continental and Jenkins Construction is reversed. This matter is remanded to the trial court for further proceedings. Defendant movers are to pay all costs of this appeal.
REVERSED AND REMANDED.
NOTES
[1] Plaintiff named several other defendants in this suit; however, they are not parties to the present appeal.
[2] On the date of the accident, LSA-R.S. 9:2791 provided:

A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
[3] On the date of the accident, LSA-R.S. 9:2795 provided:

A. As used in this Section:
(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
(5) "Person" means individuals regardless of age.
B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purposes.
(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(c) Incur liability for any injury to person or property incurred by such person.
(2) The provisions of this Subsection shall apply to owners of commercial recreational developments or facilities for injury to persons or property arising out of the commercial recreational activity permitted at the recreational development or facility that occurs on land which does not comprise the commercial recreational development or facility and over which the owner has no control when the recreational activity commences, occurs, or terminates on the commercial recreational development or facility.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.
E. The limitation of liability provided in this Section shall apply to any lands or water-bottoms owned, leased, or managed by the Department of Wildlife and Fisheries, regardless of the purposes for which the land or waterbottoms are used, and whether they are used for recreational or nonrecreational purposes.
[4] See, Stuart v. City of Morgan City, 504 So.2d 934, 938 (La.App. 1st Cir.1987); Van Pelt v. Morgan City Power Boat Association, Inc., 489 So.2d 1346, 1350-51 (La.App. 1st Cir.), writ granted, 493 So.2d 627 (La.1986) (dismissed because of compromise); Caillouette v. Cherokee Beach & Campgrounds, Inc., 386 So.2d 666, 667 (La.App. 1st Cir.), writ denied, 387 So.2d 597 (La.1980).