672 So.2d 262 (1996)
Wanda Gautreau and Gary GAUTREAU
v.
Roderick WASHINGTON and State Farm Fire and Casualty Insurance Company.
No. 95 CA 1731.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
Writ Denied June 28, 1996.
*263 Vincent J. Sotile, Jr., Gonzales, for Plaintiffs-Appellants Wanda Gautreau and Gary Gautreau.
John W. Perry, Jr., Baton Rouge, for Defendants-Appellees Roderick Washington and State Farm Fire and Casualty Insurance Company.
Before CARTER and PITCHER, JJ., and CRAIN, J. Pro Tem.[1]
*264 PITCHER, Judge.
Plaintiffs, Wanda Ann Gautreau and Gary Gautreau, appeal from the trial court's judgment, granting a motion for summary judgment in favor of defendants, Roderick Washington and State Farm Fire and Casualty Insurance Company. We affirm.

FACTS AND PROCEDURAL HISTORY
On March 6, 1994, Wanda Ann Gautreau (Mrs. Gautreau) participated in a horse show sponsored by Southern University at Farr Park in Baton Rouge, Louisiana. As Mrs. Gautreau and her horse arrived at the eastern entrance leading into the arena, Mrs. Gautreau found that the entrance was congested. This entrance controlled both the ingress and egress to the arena. Because of the congestion, Mrs. Gautreau decided to wait with her horse at the outer end of the entrance.
While Mrs. Gautreau and her horse were waiting, Roderick Washington (Mr. Washington) and his horse, Poco Boy Dixon, arrived at the same entrance.[2] While in this entrance area, a horse exiting the arena brushed up against Mr. Washington's horse on two occasions. As a result of this contact, Mr. Washington's horse turned around, rared up and kicked two or three times, striking Mrs. Gautreau once on the hip.
On August 31, 1994, Mrs. Gautreau and her husband, Gary Gautreau, filed a petition for damages, alleging that Mr. Washington was negligent and strictly liable for her injuries. Mr. Washington and his insurer, State Farm Fire and Casualty Insurance Company (State Farm), were named as defendants. Mr. Washington and State Farm filed an answer on September 21, 1994, and a motion for summary judgment on December 13, 1994. Mr. Washington and State Farm alleged that Mr. Washington was statutorily immune from any liability resulting from the incident.
A hearing was held on March 23, 1995. Following the hearing, the trial court granted the motion for summary judgment in favor of Mr. Washington and State Farm. Mr. and Mrs. Gautreau appeal and allege the following assignments of error:
1. Whether or not a genuine issue of material fact exists as to whether the requirements of LSA-R.S. 9:2795.1, subsections (E) and (F) were satisfied, and concomitantly, whether disputed issues of material facts [exist] as to whether the defendants should be precluded from invoking the privilege of immunity established by subsection (B) of said statute, as mandated by subsection (G), in the event that the requirements of subsections (E) and (F) are not satisfied.
2. Whether or not there is a genuine issue of material fact warranting reversal of summary judgment based on the drafters' of LSA-R.S. 9:2795.1 intent to hold "participants" in equine activities accountable for negligent injury of fellow "participants" by reserving the immunity privilege established in subsection (B) exclusively for an "equine activity sponsor, equine professional and any other person, which shall include a corporation or partnership," and by making the conspicuous posting of the notice of warning and liability disclaimer provided in subsection (F) a sine qua non for invocation of the immunity privilege.
3. Whether or not there exists a genuine issue of material fact warranting reversal of summary judgment based on [defendant's] conduct, which reflected "willful and wanton disregard" for the safety of plaintiff and caused her injury.

SUMMARY JUDGMENT
It is well settled that the granting of a summary judgment is proper only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Lewis v. Diamond Services Corporation, 93-1150, p. 5 (La.App. 1st Cir. 5/20/94), 637 So.2d 825, 828, writ denied, 94-1638 (La. 10/14/94), 643 So.2d 159. The burden is upon the mover for summary judgment to show that no genuine issues of material *265 fact exist, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Ledet v. Quality Shipyards, Inc., 615 So.2d 990, 992 (La.App. 1st Cir.1993).
Summary judgments are not favored, and reasonable doubt should be resolved against the mover. In determining whether material issues have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. O'Quinn v. Power House Services, Inc., 633 So.2d 707, 710 (La.App. 1st Cir.1993).

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, Mr. and Mrs. Gautreau assert that there is a genuine issue of material fact as to whether or not the drafters of LSA-R.S. 9:2795.1B intended to hold "participants" in equine activities accountable for negligent injury to fellow "participants" by reserving the privilege of immunity established in subsection B exclusively for an "equine activity sponsor, equine professional and any other person, which shall include a corporation or partnership".
Specifically, Mr. and Mrs. Gautreau argue that the language "any other person" in subsection B of LSA-R.S. 9:2795.1 does not provide a privilege of immunity to participants whose negligence causes injury to other participants. On the other hand, Mr. Washington argues that he falls within the category of "any other person" under subsection B and is entitled to the privilege of immunity.
LSA-R.S. 9:2795.1B provides as follows:
* * * * * *
B. Except as provided in Subsection C of this Section, an equine activity sponsor, an equine professional, or any other person, which shall include a corporation or partnership, shall not be liable for an injury to or the death of a participant resulting from the inherent risks of equine activities and, except as provided in Subsection C of this Section, no participant or participant's representative shall make any claim against, maintain an action against, or recover from an equine activity sponsor, an equine professional, or any other person for injury, loss, damage, or death of the participant resulting from any of the inherent risks of equine activities.
LSA-R.S. 9:2795.1B provides an immunity from liability to "an equine activity sponsor, an equine professional, or any other person, which shall include a corporation or partnership." However, LSA-R.S. 9:2795.1 does not set forth a definition for "person". According to Black's Law Dictionary, "person" means "in general usage, human being (i.e. natural person), though by statute term may include a firm, labor organizations, partnerships, associations, corporations...." See Black's Law Dictionary 1028 (5th ed.1979). Clearly, Mr. Washington falls within the definition of "person".
LSA-R.S. 9:2795.1 was originally enacted by Senate Bill No. 627, Act No. 351 of the 1992 Legislative Session. In reviewing Senate Bill No. 351, LSA-R.S. 9:2795.1 was enacted "to provide for immunity from liability for an equine activity sponsor, an equine professional, or other person for injuries or death." The legislature clearly envisioned that this immunity would be provided not only to equine professionals and equine sponsors but also other persons. In order to continue to encourage equine activities, the legislature apparently recognized the need to limit the potential liability resulting from the inherent risks associated with equine activities.[3]
Certainly, if anyone is aware of the inherent risks involved in equine activities, it would be those participants who actually work with an equine on a regular basis. Clearly, if this privilege of immunity is not *266 extended to participants, then participants would undoubtedly be reluctant to continue to participate in equine activities. It would be absurd to believe that the legislature intended to encourage the continuance of equine activities without extending this privilege of immunity to participants. Therefore, we conclude that there is no genuine issue of material fact as to the drafters' intent to include participants as persons under the privilege of immunity. Thus, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
In assignment of error number three, Mr. and Mrs. Gautreau contend that there is a genuine issue of material fact warranting reversal of the motion for summary judgment based on Mr. Washington's conduct, which reflected "willful and wanton disregard" for the safety of Mrs. Gautreau and caused her injury. Mr. and Mrs. Gautreau assert that Mr. Washington was aware of the hazard posed by the overcrowded entrance way, and he was also aware of the fact that stallions, such as his horse, might react violently if their zone of comfort is encroached upon.
LSA-R.S. 9:2795.1C sets forth those exceptions in which the liability of an equine professional, equine activity sponsor, or any other person will not be limited. One of these exceptions is when the equine sponsor, equine professional or other person "commits an act or omission that constitutes willful or wanton disregard for the safety of the participant, and that act or omission caused the injury." LSA-R.S. 9:2795.1C(4). This court has defined "wanton" as follows:
that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence.... The usual meaning ... is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.
Landry v. Uniroyal Chemical Company, Inc., 94-1274 p. 1 (La.App. 1st Cir. 3/3/95), 653 So.2d 1199, 1205 (on application for rehearing), writ denied, 95-1381 (La. 9/15/95), 660 So.2d 461. Our supreme court has held that summary judgment is an appropriate method of disposing of such a case where intent is the critical question, and that question is answered negatively. Landry v. Uniroyal Chemical Company, Inc., 653 So.2d at 1204. Clearly, the record does not support a finding that Mr. Washington's conduct was willful and wanton.
The deposition of Mr. Washington was introduced at the hearing. Mr. Washington testified that he was standing in the entrance way to the arena, and a horse exiting the arena brushed up against his horse twice, causing his horse to turn, rare up and kick two or three times. Mr. Washington stated prior to the accident, he was aware of the fact that this entrance way was congested because all the participants and their horses were entering and exiting from this same area of the arena. Mr. Washington stated that he did not feel that this area was a safe area to be entering and exiting horses.
Mr. Washington stated that his horse has a very good disposition and had never kicked anyone before. Mr. Washington stated that his horse has never rared up or acted wildly. Mr. Washington described his horse as cold-blooded, meaning "a real calm, easy going horse". Mr. Washington stated that his horse has a comfort zone of about six inches. Mr. Washington also stated that all animals have a comfort zone (a particular characteristic of having control of an area). Mr. Washington explained that because his horse was brushed by another horse, his horse felt that someone was attacking it. Mr. Washington stated that this was the first time he had ever seen his horse react that way.
Based upon the record, we do not find that a genuine issue of material exists as to Mr. Washington's conduct being willful and wanton. Clearly, the record does not reflect that Mr. Washington intentionally committed an act that could be considered willful and wanton. Instead, the actions surrounding this incident are inherent risks associated with equine activities.
*267 LSA-R.S. 9:2795.1A(6) sets forth a list of activities considered to be inherent risks. Two of the activities considered to be inherent risks are (1) the unpredictability of an equine's reaction to such things as sounds, sudden movement, and unfamiliar objects, persons, or other animals and (2) collisions with other equine or objects. See LSA-R.S. 9:2795.1A(6)(b) and (d). Undoubtedly, the activities leading up to the injury suffered by Mrs. Gautreau are encompassed within the two activities listed above as inherent risks associated with equine activities. We conclude that there is no genuine issue of material fact as to whether Mr. Washington's conduct was willful and wanton. Thus, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER ONE
Through assignment of error number one, Mr. and Mrs. Gautreau contend that Mr. Washington is not entitled to the privilege of immunity set forth in LSA-R.S. 9:2795.1 because of Mr. Washington's failure to comply with the posting of warning signs as required in subsections (E) and (F) of LSA-R.S. 9:2795.1.
LSA-R.S. 9:2795.1 provides, in pertinent part, as follows:
* * * * * *
E. Every equine professional and every equine activity sponsor shall post and maintain a sign conspicuously located which contains the warning notice specified in Subsection F of this Section. The sign shall be placed in a clearly visible location on or near any stable, corral, or arena where the equine professional or the equine activity sponsor conducts equine activities. The warning notice specified in Subsection F of this Section shall appear on the sign in black letters, with each letter to be a minimum of one inch in height. Every written contract entered into by an equine professional or by an equine activity sponsor for the provision of professional services, instruction, or the rental of equipment or tack or an equine to a participant, whether or not the contract involves equine activities on or off the location or site of the equine professional's or the equine activity sponsor's business, shall contain in clearly readable print the warning notice specified in Subsection F of this Section.
F. The signs and contracts described in Subsection E of this Section shall contain the following warning notice:
WARNING
Under Louisiana law, an equine activity sponsor or equine professional is not liable for an injury to or the death of a participant in equine activities resulting from the inherent risks of equine activities, pursuant to R.S. 9:2795.1.
G. Failure to comply with the requirements concerning warning notices provided in this Section shall prevent an equine activity sponsor or equine professional from invoking the privilege of immunity provided by this Section.
After reviewing the above provisions, we find that the requirement of posting warning signs for purposes of invoking the privilege of immunity set forth in LSA-R.S. 9:2795.1B applies only to equine professionals and equine activity sponsors. Subsection E of LSA-R.S. 9:2795.1 specifically directs this requirement to post warning signs to equine professionals and equine activity sponsors, and the statute is silent as to placing this same requirement on any other person.
Clearly, subsections E and G do not apply to any other person except those specifically named in the subsections. Therefore, this assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Wanda Ann Gautreau and Gary Gautreau.
AFFIRMED.
NOTES
[1] Judge Hillary Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The record reflects that Mr. Washington had two horses in the horse show. However, the horse involved in this incident was Poco Boy Dixon, a stallion.
[3] LSA-R.S. 9:2795.1A states, in part, the following:

(6) "Inherent risks of equine activities" means those dangers or conditions which are an integral part of equine activities,....
* * * * * *