IzPITCHER, Judge.
Louisiana Insurance Guaranty Association appeals from the trial court’s granting of a motion for summary judgment, finding that plaintiffs, Nancy and Paul Billingsley, must first exhaust the insurance coverage of Presidential Fire and Casualty Company, the tort-feasor’s insurer, and that there is no liability exposure under State Farm Mutual Automobile Insurance Company’s uninsured motorist policy. We affirm.
FACTS AND PROCEDURAL HISTORY
On July 31, 1986, Nancy Billingsley was injured when the vehicle she was driving was struck by an 18-wheel tractor trailer driven by Percy Mitchell and owned by Henry Jacobson.
On May 21,1987, Nancy and Paul Billings-ley, filed a petition for damages, naming as *210 defendants Percy Mitchell, Henry Jacobson, and Presidential Fire and Casualty Company (Presidential), the insurer of the 18-wheel tractor trailer. Presidential was ordered into liquidation in November, 1991. On January 29, 1992, the Billingsleys filed an amended petition, adding Louisiana Insurance Guaranty Association (LIGA) as a defendant. In the petition, the Billingsleys alleged that Presidential had been declared insolvent.
On March 31, 1993, the Billingsleys filed a second amending petition, naming their uninsured/underinsured motorists (UM) insurer, State Farm Mutual Automobile Insurance Company (State Farm), as a defendant. State Farm filed a motion for summary judgment on March 22, 1993. In the motion for summary judgment, State Farm alleged that because Presidential did not become insolvent within one year of the alleged accident, the 18-wheel tractor trailer was not an uninsured motor vehicle pursuant to LSA-R.S. 22:1406(D)(3) and was not entitled to insurance coverage through State Farm’s UM policy. State Farm alleged that the Billingsleys should first recover from Presidential’s insurance policy.
After a hearing, the trial court granted State Farm’s motion for summary judgment. The trial court held that the Billingsleys must first exhaust the $500,000.00 policy limits of the ^Presidential policy, because State Farm’s policy only supplied UM coverage.
Thereafter, State Farm filed a second motion for summary judgment. In this motion for summary judgment, State Farm argued that, because the trial court ruled that the Presidential’s policy was primary, State Farm was subject to no exposure under its UM policy and should be dismissed from the suit. State Farm attached to the motion for summary judgment a stipulation from the Billingsleys that the damages claimed did not exceed the $500,000.00 policy limits of the Presidential policy. After a hearing on the motion for summary judgment, the trial court granted State Farm’s motion for summary judgment and dismissed State Farm from the suit. LIGA now appeals the trial court’s granting of both motions for summary judgment.[2]
SUMMARY JUDGMENT
In its single assignment of error, LIGA contends that the trial court erred in granting State Farm’s motions for summary judgment.
It is well settled that the granting of a summary judgment is proper only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966[3]; Lewis v. Diamond *211 Services Corporation, 93-1150, p. 5 (La.App. 1st Cir. 5/20/94); 637 So.2d 825, 828, writ denied, 94-1638 (La. 10/14/94); 643 So.2d 159. The burden is upon the mover for summary judgment to show that no genuine issues of material fact exist, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Ledet v. Quality Shipyards, Inc., 615 So.2d 990, 992 (La.App. 1st Cir.1993).
The jurisprudence has traditionally held that summary judgments are not favored, and any reasonable doubt should be resolved against the mover. In determining whether material issues have in fact been disposed of, any doubt was to be resolved against granting the summary judgment and in favor of trial on the merits. O’Quinn v. Power House Services, Inc., 633 So.2d 707, 710 (La.App. 1st Cir.1993). See, however, Footnote 3 supra.
Specifically, LIGA argues that, because the Louisiana Supreme Court held that the 1990 and 1992 amendments to LSA-R.S. 22:1386(A) are retroactive, then, for consistency, the 1990 repeal of LSA-R.S. 22:1406(D)(3) should also be considered retroactive.
[5Prior to the 1990 amendment, LSA-R.S. 22:1386(A) was contained in LSA-R.S. 22:1386(1) and read as follows:
(1) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this Act shall be reduced by the amount of any recovery under such insurance policy.
Under this provision, the claimant was to recover first from LIGA before proceeding against his UM coverages. See Hickerson v. Protective National Insurance Company of Omaha, 383 So.2d 377 (La.1980). However, in 1990, LSA-R.S. 22:1386(1) was amended by Act 130 of 1990, effective September 7, 1990, by the legislature, to provide as follows:
(1) Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage. Any amounts payable by such other insurance shall act as a dollar-for-dollar credit against any liability of the association under this Part.[4]
This amendment changed the order in which a claimant was to proceed before proceeding against LIGA. This 1990 amendment required a claimant to exhaust his or her UM coverages before recovering from LIGA. Subsequently, this 1990 amendment was reenacted with minor changes in § 2 of Act 237 of 1992.[5] In addition, § 3 of Act 237 of 1992 *212 provided that “This Act shall apply to all covered claims, as defined in R.S. 22:1379, pending on or arising on or after the | (¡effective date of this Act.”[6]
In Segura v. Frank, 93-1271, 93-1401 (La. 1/14/94); 630 So.2d 714, cert. denied, — U.S. -, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994), the Louisiana Supreme Court interpreted the 1992 amendment as applying retroactively to all pending claims. We do not find that the case of Segura is dispositive of the issue before us. In Segura, the issue dealt with the determination of the retroactivity of the 1990 and 1992 amendments to LSA-R.S. 22:1386, which required a claimant to exhaust all other insurance coverage before collecting from LIGA. In our case, the issue is whether the repeal of LSA-R.S. 22:1406(D)(3), which limits UM coverage to instances where the tortfeasor’s liability insurer becomes insolvent within one year of the accident, is retroactive.[7]
LSA-R.S. 22:1406(D)(3) was not repealed until 1990, by Act 634 of 1990, effective September 7, 1990. Thus, at the time State Farm originally issued UM coverage to the Billingsleys, this provision was in effect. Additionally, at that time, State Farm’s policy of |7UM coverage also set forth the limitation provided by LSA-R.S. 22:1406(D)(3) by stating that “uninsured motor vehicle” means a vehicle which has liability insurance coverage but the insuring company “is or becomes insolvent within one year after the accident.” According to LSA-R.S. 22:1406(D)(3) and the State Farm policy, because the accident occurred on July 31, 1986, in order for State Farm to provide UM coverage, Presidential would have had to become insolvent prior to July 31, 1987. However, Presidential did not become insolvent until November, 1991, over five years after the accident. Thus, at the point of Presidential’s insolvency, there was no coverage provided under State Farm’s UM policy for the insolvency of Presidential.
However, LIGA contends that the 1990 repeal of LSA-R.S. 22:1406(D)(3) should be applied retroactively, and, therefore, the limitation on UM coverage should not apply in this case. In determining whether this repeal may be applied retroactively, we are directed to LSA-C.C. art. 6, which provides as follows:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
In Cole v. Celotex Corporation, 599 So.2d 1058, 1063 (La.1992), the Supreme Court stated:
LSA-C.C. art. 6 requires that we engage in a two-fold inquiry. First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive.
The principle contained in LSA-C.C. art. 6 has constitutional implications under the due process and contract clauses of both the United States and Louisiana Constitutions. See St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d 809, 816, *213 n. 11 (La.1992). Thus, even where the legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 816, n. 11.
IgThus, for the repeal of LSA-R.S. 22:1406(D)(3) to be applied retroactively, the foregoing requisites must be met.
In this case, LSA-R.S. 22:1406 was amended, in 1990, to delete subsection (D)(3), making it unenforceable to limit UM coverage to incidents where the tortfeasor’s insurer becomes insolvent within one year of the accident. In reviewing this 1990 amendment to LSA-R.S. 22:1406, we find that there was no legislative expression of intent that the 1990 amendment to LSA-R.S. 22:1406(D)(3) be applied retroactively. Therefore, we must determine whether the statutory provision prior to the repeal was substantive, procedural or interpretive.
Substantive laws establish new rules, rights, and duties or change existing ones. Brown v. Churchill & Thibaut, Inc., 93-1216, p. 6 (La.App. 1st Cir. 5/20/94); 637 So.2d 764, 768. Procedural laws prescribe the method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Segura v. Frank, 630 So.2d at 723. Interpretive laws merely establish the meaning the interpreted statute had from the time of its enactment. Brown v. Churchill & Thibaut, Inc., 637 So.2d at 768.
Clearly, LSA-R.S. 22:1406(D)(3) is a substantive law, and the repeal of this statutory provision is a substantive change in the law. LSA-R.S. 22:1406(D)(3) set forth a rule which limited UM coverage to instances in which the tortfeasor’s liability insurer became insolvent within a year of the accident. A removal of this law would impair contractual obligations provided by State Farm’s UM coverage to the Billingsleys by creating UM insurance coverage where the policy and law previously did not provide such coverage. Thus, the repeal clearly affects State Farm’s contractual obligations as well as its vested rights with the Billingsleys. Therefore, we conclude that the 1990 repeal of LSA-R.S. 22:1406(D)(3) was a substantive change in the law which cannot be applied retroactively to impair contractual obligations and affect vested rights. See also Holton v. Brown, 94-2687 (La.App. 4th Cir. 5/16/95); 658 So.2d 6, writs denied, 95-2279, 95-2308 (La. 12/8/95); 664 So.2d 423. Based upon these facts before us, we find that State Farm’s UM policy does not provide coverage to the Billingsleys for the damages sustained in the July 31,1986, automobile accident.
CONCLUSION
For the foregoing reasons, the judgments of the trial court, granting the motions for summary judgments in favor of State Farm, are affirmed. Costs of this appeal are assessed to appellant, Louisiana Insurance Guaranty Association.
AFFIRMED.

. After filing a suspensive appeal, LIGA filed a motion for summary judgment, seeking to obtain full credit for State Farm’s UM policy pursuant to LSA-R.S. 22:1386(A) as amended in 1992. The trial court denied the motion for summary judgment.

. In the 1996 extraordinary legislative session, the legislature enacted Act 9, effective May 1, 1996, amending LSA-C.C.P. art. 966 to provide as follows:
A.(1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
*211 D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
F. A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages.
G. Notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover.

. Although the legislative history does not reflect when this change occurred, we note that LSA-R.S. 22:1386(1) was redesignated as LSA-R.S. 22:1386(A).

. As amended and reenacted by Act 237 of 1992, LSA-R.S. 22:1386(A) provides as follows:
A. Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage. As to the association, any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association shall not be liable for such portion of the damages of the claimant.

. LSA-R.S. 22:1379 provides, in pertinent part, as follows:
(3)(a) “Covered claim" means an unpaid claim, including one for unearned premiums by or against the insured or agent, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970, and:
(i) The claimant or insured is a resident of this state at the time of the insured event; or ■
(ii) The property from which the claim arises is permanently located in this state.
[[Image here]]

. Prior to the 1990 repeal, LSA-R.S. 22:1406(D)(3) provided as follows:
(3) An insurer's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured’s uninsured motorist coverage is in effect where the liability insurer of the tort feasor becomes insolvent within one year after such an accident. Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insureds than is provided hereunder.