J^SUSAN M. CHEHARDY, Judge.
The plaintiff appeals the dismissal of her suit arising out of the death of her champion thoroughbred jumping horse. The dismissal was based on the trial court’s conclusion that the defendants were shielded from liability by a state statute. We reverse and remand for further proceedings. FACTS
On April 19, 2002 Trish I. Murrell filed suit against O.J. Hooter, Wendy Hooter, John Abert, and their insurer.[1] She alleged as follows: On or about May 23, 2001, she was owner of Maxxed Out, a thoroughbred gelding and champion jumper. The horse was being boarded on property owned by, and in the care, custody and control of, O.J. Hooter and Wendy Hooter. Maxxed Out and other horses escaped from the property through a series of gates that had been left open. At 8:35 p.m. on May 23, 2001, Maxxed Out was struck by a van traveling on Louisiana Highway 18 (River Road). Due to his *682 injuries, Maxxed Out was euthanized shortly after the accident.
The plaintiff asserted that the death of the horse and the loss to her resulted from the defendants’ negligence in the following respects: failing to have policies 13m effect to protect the safety of Maxxed Out; failing to implement procedures to ensure the safety of Maxxed Out; failing to properly maintain care, custody and control of Maxxed Out; failing to exercise reasonable care and vigilance; failing to have proper equipment in place to prevent escape of Maxxed Out; failing to post signs warning of the risk associated with leaving the gates open; failing to provide instructions, policies and procedures to persons on the property owned by O.J. Hooter and Wendy Hooter; allowing persons on the premises without supervision; and any other acts of negligence and strict liability to be adduced during discovery and shown at trial.
The plaintiff sought damages for loss of the value of Maxxed Out; loss of income; grief, mental anguish and suffering; and any other damages proven at trial.
The Hooter defendants filed an Exception of No Cause of Action/Right of Action and a Motion for Summary Judgment. The basis for the Motion for Summary Judgment was that the defendants are protected from liability by the Equine Immunity Statute, La.R.S. 9:2795.1.[2] In support of summary judgment, the defendants filed the following Statement of Uncontested Material Facts:
1. Plaintiff filed suit against the defendant seeking damages for the death of a horse.
2. At all times herein the defendants were engaged in the business of boarding farm animals and more specifically horses.
3. That the defendant’s [sic] horse got out of its enclosure as a result of someone other than the defendant leaving a gate open.
4. That as a result the plaintiffs horse crossed a roadway, was struck by a vehicle and died.
|45. That the risk of a horse getting out of its enclosure and colliding with an automobile, is [an] integral part of boarding horses.
6. That the defendants complied with LA. R.S. 9:2795.1, in that they posted conspicuously a sign containing the warning notice as required by LA. R.S. 9:2795.1(F).
In opposition to the summary judgment motion, the plaintiff filed an Affidavit, in which she stated:
1. I was the owner of Maxxed Out in May of 2001.
2. On May 23, 2001, I was not involved in an animal show, training or teaching activities involving farm animals, riding or inspecting Maxxed Out or other farm animals nor participating in a ride, trip or hunt with Maxxed Out.
3. Mr. and Mrs. Hooter were boarding Maxxed Out and providing for his daily care.
*683 4. I was not present when Maxxed Out escaped from the Hooters’ property through open gates.
In addition, the plaintiff filed excerpts from the deposition of Wendy Hooter, which established that the Hooters were responsible for cleaning Maxxed Out’s stall, feeding and watering him, and turning him out to pasture; that three of the gates through which Maxxed Out escaped were supposed to be closed 100% of the time; and that horses had escaped from the property previously when someone left a gate open, although none were killed.
Finally, the plaintiff filed a response to the defendants’ statement of material facts, in which the plaintiff denied statements 3, 5, and 6. Thus, the plaintiff denied that her horse got out as a result of someone other than the defendant leaving a gate open; denied that the risk of a horse getting out and colliding with an automobile is an integral part of boarding horses; and denied that the defendants 1 ^complied with La.R.S. 9:2795.1 by posting a sign containing the warning notice, as required by Subsection F of the statute.
In response to the plaintiffs opposition, the defendants supplemented their summary judgment papers with photographs of the warning signs posted on their property.
The trial court held in favor of the defendants and granted summary judgment. In written reasons for judgment, the trial court found that the plaintiff was a “participant” in farm animal activity for purposes of the statute, because she boarded her horse with the defendants. Because “farm animal activity” includes boarding and daily care, the court concluded, it was not necessary for the plaintiff to be present or personally involved in order for there to have been a “farm animal activity.” Therefore, the court held, the immunity provided by the statute applies in this case.
In addition, the court ruled that the exclusion from immunity for wanton and willful disregard for safety in La.R.S. 9:2795.1(0(4) does not apply because “there is no factual support whatsoever for a contention that the gate was left open willfully or wantonly.... Further, the court does not find the existence of a genuine issue of fact on this point.” Finding that the immunity provided by La.R.S. 9:2795.1(B) applies and that no statutory exception applies, the court found the defendants entitled to summary judgment.
The plaintiff appeals.
LAW AND ANALYSIS
La.R.S. 9:2795.1(B) provides as follows, in pertinent part:
B. Except as provided in Subsection C of this Section, a farm animal activity sponsor, a farm animal professional, or any other person, ... shall not be liable for an injury to or the death of a participant resulting from the inherent risks of a farm animal activity and, |fiexcept as provided in Subsection C of this Section, no participant or participant’s representative shall make any claim against, maintain an action against, or recover from a farm animal activity sponsor, a farm animal professional, or any other person for injury, loss, damage, or death of the participant resulting from any of the inherent risks of farm animal activities. [Emphasis added.]
Subsection C, which Subsection B excepts from its coverage, provides that nothing shall prevent or limit the liability of a farm animal activity sponsor if the farm animal activity sponsor commits “an act or omission that constitutes willful or wanton disregard for the safety of the participant, and that act or omission caused the injury.” La.R.S. 9:2795.1(C)(4).
*684 There is no dispute that the defendants are “farm animal activity sponsors” and that Maxxed Out was a “farm animal” as defined under the statute. Further, the statute states that “farm animal activity” includes boarding a farm animal, including daily care. La.R.S. 9:2795.1(A)(3)(c).
However, the plaintiff contests the trial court’s ruling that, by paying the defendants to board her horse, she was a “participant” in a farm animal activity for purposes of the statutory immunity. Further, she contends the trial court’s application of the statute is not consistent with the legislative intent.
The statute defines “participant” as “any person, whether amateur or professional, who engages in a farm animal activity.... [Emphasis added.]” La.R.S. 9:2795.1(A)(8). It defines “engages in a farm animal activity” as follows:
“Engages in a farm animal activity” means riding, training, providing, or assisting in providing medical treatment of, driving, or being a passenger upon a farm animal, whether mounted or unmounted, or any person assisting a participant or show management. The term “engages in a farm animal activity” does not include being a spectator at a farm animal activity, except in cases where the spectator places himself in an unauthorized area and in immediate proximity to the farm animal activity.
JjLa.R.S. 9:2795.1(A)(1).
However, the statute also defines “farm animal activity” as including, among other things, boarding a farm animal, including daily care. La.R.S. 9:2795.1(A)(3)(c).
Finally, the statute defines “inherent risks of farm animal activities” as “those dangers or conditions which are an integral part of a farm animal activity, including but not limited to ... collisions with other farm animals or objects.” La.R.S. 9:2795.1(A)(7)(c).
The only cases we find that have interpreted the statute both differed factually from this ease. The plaintiff in each case was injured while riding, either by being thrown off the horse[3] or by being kicked by another horse nearby.[4] In one case, the issue was whether the Equine Immunity Statute violated the constitutional guarantee of equal protection; the court affirmed the lower court’s ruling that it was constitutional.[5] In the other case, the issue was whether fellow participants in equine activity are entitled to the statutory immunity from liability to each other; the court found they are entitled tó such immunity.[6]
In those cases, unlike in this one, there was no question that the plaintiffs were “participants” as defined in the statute.
Here, however, the plaintiff contests inclusion of a person who, like her, pays to have an animal boarded, but who is not on the premises where the animal is being boarded nor engaging in any activity related to the animal.
We agree with the plaintiff. The trial court erred in interpreting the statute. The trial court mistakenly concluded that the immunity statute applied because the |scourt incorporated into its definition of a “participant” the definition of “farm animal activity.” The definition of “participant” includes the phrases “engages in farm ani *685 mal activity” and “farm animal activity.” The trial judge ignored the specific definítion of “engages in farm animal activity,” by separating “engages” from “farm animal activity” to define “farm animal activity” separately. However, since the statute itself defines both phrases, the trial judge’s analysis is inconsistent with principles of statutory interpretation.
‘Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.” La.R.S. 1:3.
“In construing a statute an appellate court is bound to consider all parts together, giving effect to all parts, if possible, and not construing as surplusage any sentence, clause or word, if- a construction can be legitimately found which will give meaning to and preserve all the words of the statute.” Ritchie v. Louisiana Dept. of Public Safety and Corrections, 595 So.2d 1158, 1160, writ denied 600 So.2d 642.
We conclude the specific definition- of “engages in a farm animal activity” is intended to be read within the context of the use of that phrase in the' definition of “participant.” To do otherwise ignores the rules set out above and violates the spirit of the law.
Accordingly, because the plaintiff here was not “riding, training, providing, or assisting in providing medical treatment of, driving, or being a passenger upon a farm animal, whether mounted or unmounted, or ... assisting a participant or show JLmanagement,” as defined by La.R.S. 9:2795.1(A)(1), she was not a “participant” for purposes of the statutory immunity.
Our conclusion is bolstered by the exclusion set out in La.R.S. 9:2795.1(A)(1): “The term ‘engages in a farm animal activity’ does not include being a spectator at a farm animal activity, except in cases where the spectator places himself in an unauthorized area and in immediate proximity to the farm animal activity.” The purpose of the statute is to protect farm animal activity sponsors against liability to persons on the premises who are taking part in the activities.
Further, we disagree with the trial court’s determination that the horse’s escape and its being killed by a vehicle on a highway off the premises is among the “inherent risks of farm animal activities” for which liability is excluded in La.R.S. 9:2795.1(B). The court based that conclusion on La.R.S. 9:2795.1(A)(7)(d), which defines “inherent risks of farm animal activities” as including but not limited to “collisions with other farm animals or objects.” However, that definition also states that the inherent risks means “those dangers or conditions which are an integral part of a farm animal activity.” The injury/death of a horse caused by a collision with a vehicle on a highway cannot be said to be integral to farm animal activity.[7] Accordingly, the defendants cannot invoke the immunity from liability provided by La.R.S. 9:2795.1. The statute does not apply in this case.
Because we conclude that the statute does not apply to the plaintiff in this case, we need not address the exclusion for will *686 ful and wanton disregard for safety in La.R.S. 9:2795.1(0(4).
|inFor the foregoing reasons, we reverse the summary judgment and remand the matter for further proceedings. Costs of this appeal are assessed against the defendants/appellees, O.J. Hooter and Wendy Hooter.

REVERSED AND REMANDED

. The record before us does not establish the relationship of defendant John Albert to the facts alleged. There is no allegation that he was either an employee of the Hooters or had any connection to the property or to the other defendants. He is not before us on this appeal.

. This statute formerly dealt with equine activities only, but was amended in 1999 to make it broader, so that it covers not only equine activities but also farm animal activities. Acts 1999, No. 311, § 1. Its title now is "Limitation of liability of farm animal activity sponsor or professional.” In 2003 the legislature created La.R.S. 9:2795.3, a separate statute dealing with equine activities only, which has the title "Limitation of liability of equine activity sponsor.” Acts 2003, No. 898, § 1. However, at the time of the incident here, the applicable statute was La.R.S. 9:2795.1.

. Foul v. Trahan, 98-488 (La.App. 3 Cir. 10/7/98), 718 So.2d 1081.

. Gautreau v. Washington, 951731 (La.App. 1 Cir. 4/4/96), 672 So.2d 262, writ denied 96-1164 (La.6/28/96), 675 So.2d 1123.

. Faul, 98-488 at p. 14, 718 So.2d at 1088.

. Gautreau, 951731 at p. 5, 672 So.2d at 265.

. “Inherent involved in the constitution or essential character of something: belonging by nature or settled habit: intrinsic" Webster's Ninth New Collegiate Dictionary 622 (1989). "Integral ... la: essential to completeness: constitüent .... c: formed as a unit with another part” Id., at 628.