532 So.2d 490 (1988)
Hance Vernon MYERS, Jr.
v.
Barbara Wurzlow MYERS.
No. CA 87 0918.
Court of Appeal of Louisiana, First Circuit.
October 12, 1988.
Charles Gary Blaize, Houma, for Hance V. Myers, Jr.
*491 Daniel C. Vidrine, Baton Rouge, Joseph Waitz, Jr., Houma, for Barbara W. Myers.
Before CARTER, LANIER and LeBLANC, JJ.
LANIER, Judge.
This action commenced with a summary proceeding filed in proper person by a wife against her divorced husband seeking $6,691.92 in past due permanent alimony, requesting that the husband be held in contempt of court, and asking that the husband be cast for all costs. A second summary proceeding was filed by the wife through an attorney which increased the claim for past due permanent alimony to $14,095.20 and asserted a new claim for a reasonable attorney fee. After a hearing, the trial court rendered judgment in favor of the wife for $838.03 for past due alimony "with judicial interest from October 1, 1984, as the indebtedness was incurred." This judgment is silent on the attorney fee and cost costs. The wife took this devolutive appeal.

FACTS
On June 6, 1959, Barbara Wurzlow and Hance Vernon Myers, Jr. were married. By a judgment dated October 26, 1981, Mr. Myers was granted a divorce from Mrs. Myers based on an actual separation of more than one year, and Mrs. Myers was found free from fault.
Subsequently, disputes arose between the parties over the partition of the community property. Finally, on September 25, 1984, the parties entered into a compromise agreement for the partition of the community and for permanent alimony. The pertinent portions of this agreement, which were dictated into the record[1] (by Mrs. Myers' attorney), are as follows:
After long negotiations and also after conference with the Court and the help of the Court in making suggestions towards a settlement, we have arrived at a compromise and settlement of the matters which exist between us. In that connection sir we offer, introduce, and file into evidence a document which we're going to identify as Myers-1 which is a proposal for distribution of community which has been submitted by Mrs. Barbara Myers and on which document we have indicated certain changes which I will specify.... There are no changes on page six[2] with the exception that at *492 the bottom of the page where we discussed the issue of the second mortgage bearing against the family home on Lynnwood [sic] Drive. It is stipulated and agreed that Mrs. Myers will assume both the first and second mortgage at the amounts approximately as shown and that in connection with that, Mr. Myers will pay to Mrs. Myers as alimony the amount necessary to pay whatever principle [sic] and interest is required on the second mortgage for a period of up to eight years and we're going to use the beginning date for all of this of October 1, 1984. It is further stipulated that in the payment of this mortgage by Vernon that it will paid [sic] for a period up to eight years from October 1, 1984 or until Barbara remarries; whichever would be sooner. And that the payment will be designated as alimony during that entire period of time so that he may have a deduction for the alimony payments and she would have the deduction for the interest payments. It is further stipulated that he will receive a credit for any amounts paid against principle [sic] on this second mortgage loan. And no credit for any amount paid as interest on the second mortgage.... The only other agreement between the parties is that Vernon will pay to Barbara as permanent alimony the sum of $1,000.00 per month for a period of 24 months beginning October 1, 1984. After which time the alimony will terminate. It is further stipulated and agreed that each party will be responsible for the debts which each of them have paid; that each party will assume all of the debts and liabilities which attach to each of the items being received by each of them. In other words Mr. Myers will assume the mortgages bearing against the stock against the immovable property and so on which is being acquired by him as his portion of the community estate. Each party releases the other from any further claims, or accounting, or reimbursements, or accummulation [sic] of any kind of nature whatsoever forever. I think I have covered everything Your Honor.
This agreement was incorporated in a "JUDGMENT PARTITIONING COMMUNITY PROPERTY" which was signed on November 30, 1984, and which provided as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that community property existing between HANCE VERNON MYERS, JR. and BARBARA WURZLOW MYERS be partitioned in accordance with the documents attached hereto and made a part hereof, one document being previously identified in the proceeding held on the 25th day of September, 1984, as MYERS-1, a proposal for distribution of community property submitted by BARBARA WURZLOW MYERS, and identified as Exhibit "A", with this Judgment; and, said proposal for distribution being further revised by the second document, a Stipulation of Agreement, as read and entered into the record on September 25, 1984, said stipulation being attached hereto and made a part hereof, and identified as part of this Judgment as Exhibit "B".
The evidence reflects that Mr. Myers paid the $221.70 monthly first mortgage payments[3] on the Lynwood Drive property for the 24 month period from October of 1984 through September of 1986. Mrs. Myers started paying the first mortgage monthly payments in October of 1986. Mr. Myers paid the $224.38 monthly second mortgage payments[4] on the Lynwood Drive property from the time of the agreement until the trial of this matter. Mr. Myers also made the following payments for expenses attributable to the Lynwood Drive property:

1. October 29, 1984 utility bill  $194.75
2. October 29, 1984 house insurance  95.14
3. November 17, 1984 utility bill  166.16
 _______
 TOTAL $456.05

*493 Mr. Myers also paid $500 per month to Mrs. Myers commencing in October of 1984 through September of 1986.
On November 21, 1986, Mrs. Myers filed the rule which is the subject of this appeal. In this rule, she alleged Mr. Myers was obligated to pay her $1,000 per month for 24 months commencing October 1, 1984, and, in addition thereto, Mr. Myers was obligated to pay the monthly second mortgage payments ($224.38); that Mr. Myers only paid her $500 per month during this period; that Mr. Myers paid the monthly first mortgage payment of $221.70 during this 24 month period; and that Mr. Myers was delinquent on his monthly alimony payments in the amount of $278.83 [sic] ($500.00 less $221.70 is $278.30) for 24 months or a total of $6,691.92. On February 20, 1987, Mrs. Myers (through an attorney) amended her claim to exclude credit to Mr. Myers for the first mortgage payments of $221.70 per month and to increase the amount of her past due alimony claim to $14,095.20.
The trial of this matter was held on February 27, 1987. The trial court found that Mr. Myers was obligated to pay Mrs. Myers $1,000 per month (total of $24,000) permanent alimony for the 24 month period commencing on October 1, 1984; that Mr. Myers was entitled to a credit against this obligation for the payments he made on the first and second mortgages and for the utility and insurance bills; that these credits, together with the 24 monthly $500 payments made directly to Mrs. Myers, totaled $23,161.97; and that Mr. Myers was in arrears on his alimony payments during this two year period in the amount of $838.03.

CREDIT ON ALIMONY OBLIGATION FOR INTEREST PAID ON SECOND MORTGAGE
(Assignment of Error Number 1)
Mrs. Myers contends the "trial court erred in granting H. Vernon Myers, Jr. a credit against his alimony payments for interest paid on the second mortgage assumed by Barbara Myers on the family home." Mrs. Myers asserts that pursuant to the terms of the settlement agreement Mr. Myers is only entitled to a credit against his alimony obligation for principal payments made on the second mortgage; he is not entitled to credit for the interest portion of the payments. Mrs. Myers alleges that the $224.38 per month payments on the second mortgage are all attributable to interest (and none to principal) and that Mr. Myers is entitled to no credit therefor.
The pertinent portions of the agreement state that "Mr. Myers will pay to Mrs. Myers as alimony the amount necessary to pay whatever principle [sic] and interest is required on the second mortgage ..." and states the following: [Emphasis added.]
And that the payment will be designated as alimony during that entire period of time so that he may have a deduction for the alimony payments and she would have the deduction for the interest payments. It is further stipulated that he will receive a credit for any amounts paid against principle [sic] on this second mortgage loan. And no credit for any amount paid as interest on the second mortgage.
The agreement then concludes by providing that "[t]he only other agreement between the parties is that Vernon will pay to Barbara as permanent alimony the sum of $1,000.00 per month for a period of 24 months beginning October 1, 1984." This agreement is part of a contractual compromise of the permanent alimony and community property disputes between the parties. La.C.C. art. 3071. In Bonck v. Bonck, 500 So.2d 798, 800 (La.App. 1st Cir.1986), writ denied, 501 So.2d 774 (La.1987), appears the following:
Divorced spouses may validly contract with each other for permanent alimony.... Such agreements are enforceable according to their own terms and need not be incorporated into a judgment. The reasons for such an agreement *494 are set forth in Jones v. Jones, 459 So.2d 1200, 1204 (La.App. 5th Cir.1984), writ denied, 462 So.2d 649 (La.1985) as follows:
The record supports our conclusion that the agreement states a bargained-for arrangement advantageous to both parties. Mrs. Jones is assured of a set sum of monthly payments, regardless of any change in circumstances which ordinarily reduce or terminate those payments (other than remarriage). Should her income increase or needs decrease, she will not suffer a decrease in payment. On the other hand, Mr. Jones is assured that he will never have to face an increase, in the event of an unfortunate happenstance occurring to Mrs. Jones, such as illness or unemployment. In short, each party received benefits from the arrangement. Such does not change the character of the payments as alimony.
Contracts have the effect of law on the parties thereto and must be performed in good faith. La.C.C. art. 1983. Interpretation of a contract is the determination of the common intent of the parties. La.C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La.C.C. art. 2046. Conversely, when the terms of a contract are susceptible to more than one interpretation, it is ambiguous and parol evidence may be used to show the true intent of the parties and various rules of interpretation become applicable. La.C.C. arts. 2045 et seq.; Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981). Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La.C.C. art. 2048. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La.C.C. art. 2049. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La.C.C. art. 2050. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. C.C. art. 2053. In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation; however, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor. La.C.C. art. 2057.
Whether a contract is ambiguous or not is a question of law. Aycock v. Allied Enterprises, Inc., 517 So.2d 303 (La.App. 1st Cir.1987), writs denied, 518 So.2d 512 and 513 (La.1988). After reviewing the language of the compromise contract pertinent to this assignment of error, we conclude this portion of the contract is ambiguous. The first part of the language specifically and clearly states that the second mortgage payments are alimony for "whatever principle [sic] and interest is required on the second mortgage." The second part of the language specifically designates the second mortgage payments as alimony so that they will qualify as a "deduction" for Mr. Myers. The language then provides that Mrs. Myers "would have the deduction for the interest payments" and Mr. Myers "will receive a credit for any amounts paid against principle [sic]" but "no credit for any amount paid as interest." The question then becomes to what will this credit apply? The contract does not specifically say to what this credit will be applied, and, thus, it is ambiguous.
The essence of Mrs. Myers' claim in this assignment of error is that Mr. Myers' permanent alimony obligation consisted of monthly payments of $224.38 per month for 2 years with credit against the $1,000 portion of the obligation for those portions of the $224.38 obligation which constituted principal; thereafter, for a period of 6 years, Mr. Myers would pay alimony at a rate of $224.38 per month. Since Mrs.
*495 Myers is demanding performance of this obligation, she bears the burden of proving its existence. La.C.C. art. 1831.
The only witnesses to testify at the trial were Mr. and Mrs. Myers. Their testimony concerning their common intent in making this contract is very limited. Mrs. Myers gave the following testimony:
Q Mrs. Myers was there any agreement at anytime between you and your husband that this $221.70 mortgage payment in addition to the $224.38 mortgage payment to be made by Mr. Myers as a credit towards a thousand dollar alimony payment?
A No.
Mr. Myers gave the following testimony:
Q But there was no specific agreement between you and your former wife that these payments were to be made and deducted towards the thousand dollar alimony?
A Other than the stipulation. But no communication between Barbara and myself.
. . . .
Q In reference to the second mortgage payment of $224.38, was there any agreement between you and your wife that this also may be deducted against the thousand dollar alimony...
A Other than what's stipulated in the court document.
. . . .
Q Mr. Myers was there any specific agreement between you and your wife that any of the mortgage payments, first or second mortgage payments, would be deducted against the thousand dollar alimony payment?
A Yes, that's in the stipulation.
Q I'm a little bit confused. You said you did agree that it would be?
A No, I did not specifically speak with her. No, absolutely not. It's in the court document.
Q In regards to ...
A I have not communicated with Mrs. Myers regarding this at all. Never been discussed.
The attorneys who negotiated the agreement on behalf of Mrs. Myers (Mr. Harry R. Cabral, Jr.) and Mr. Myers (Mr. William F. Dodd) were not called to testify about the intent of the parties.[5] Mrs. Myers testified that Mr. Myers made no principal payments on the second mortgage, but no bank records were introduced into evidence to refute or corroborate this. Mr. Myers was not questioned about principal payments on the second mortgage.
An appellate court may remand a case to a trial court for taking additional evidence where it is necessary to reach a just decision. La.C.C.P. art. 2164; Magnolia Petroleum Company v. Boudreaux, 233 La. 409, 96 So.2d 650 (1957); Kliebert v. Arceneaux Air Conditioning, Inc., 439 So.2d 486 (La.App. 1st Cir.1983). This case is an appropriate candidate for the application of that rule.

CREDIT ON ALIMONY OBLIGATION FOR PAYMENTS ON FIRST MORTGAGE
(Assignment of Error Number 2)
Mrs. Myers contends the trial court erred in granting Mr. Myers a credit for his payments on the first mortgage because "there was never an agreement between Mr. and Mrs. Myers that Mr. Myers was to pay the first mortgage on the family home on behalf of Mrs. Myers."
A review of the September 25, 1984 compromise agreement reveals that payment of the first mortgage by Mr. Myers was not required or included therein. As previously indicated, Mrs. Myers testified that she had no agreement with Mr. Myers that he would get a credit on his $1,000 monthly alimony obligation for paying the first mortgage monthly payments. However, Mrs. Myers also gave the following testimony:
*496 Q So you knew that you would have these two mortgages and that Mr. Myers was going to pay both of them; one of them for up to eight years and the first mortgage up to two years, is that correct?
A Right.
Q So you did in fact get that money? Paid beneficially to you, the $221.00 and $224.00. You were the direct beneficiary of it. And had he paid it to you, you would have had to pay it or someone would have had to pay it, would it not?
A Yes.
Mr. Myers gave the following testimony concerning the first mortgage payments:
Q Mr. Myers in accordance with the thousand dollar alimony payment being referenced to in this matter today, how were you making payments in regards to this thousand dollar alimony payment?
A I was paying ... I was transferring $500.00 cash to Barbara's account at the first of every month, I paid the first mortgage of $221.70 a month and I paid the second mortgage of $224.38 a month plus some little extras. The utility bills and some house insurance. And the reason I paid the utility bills was it was still coming to me at my address so I went ahead and paid those until she could get it switched to her address. And I might say for awhile the first mortgage notices went to her and she would write my address on them and send them to me.
Q In reference to this first mortgage in the amount of $221.70, at anytime did Mrs. Myers ask you to make that payment for her?
A Specifically no.
Q Was there ever an agreement between you and Mrs. Myers that the $221.70 mortgage was to be made as credit towards the thousand dollar alimony payment?
A Well I told Mrs. Myers that I didn't think that she couldif I went to the lender, the First National Bank of Houma, First National Bank of Morgan City and told them ...
Q Mr. Myers that's not my question. I'm asking you ...
MR. BLAIZE: Your Honor let him finish answering the question. If it's not responsive, then he can interrupt.
THE COURT: He can. Finish your answer.
A But if they were notified that I was no longer on the debt, Barbara would have had to refinance. And I doubt very seriously that Barbara could have refinanced those loans of $50,000.00. So as of, well let's say to make life easier on her and as a service to her I said okay we'll just leave the notes in my name. We won't go back because they're favorable rates; therefore it would be advantageous to her.
[Emphasis added.]
No bank records were filed in evidence to corroborate or refute Mr. Myers' testimony. Mrs. Myers was not questioned about Mr. Myers' testimony concerning the first mortgage payments. However, Mrs. Myers did not start paying the first mortgage payments until the month after Mr. Myers paid his twenty-fourth payment.
Because Mr. Myers contends the original compromise agreement was modified to provide that he would pay the first mortgage payments for a period of two years and get credit for these payments on his $1,000 monthly alimony obligation, he bears the burden of proving the facts or acts giving rise to the modification agreement. La.C.C. art. 1831. Because the value of such an agreement is in excess of $500, it must be proved by at least one witness and other corroborating circumstances. La.C.C. art. 1846. Consent to an obligation can be shown by performance and/or by silence.[6] La.C.C. arts. 1939 and 1942. Even if Mr. Myers cannot successfully prove an agreement to modify the *497 contractual permanent alimony agreement, he may be able to establish a right to offset based on unjust enrichment.[7]
In this factual and legal posture, and because this action is being remanded to the trial court to take additional evidence on the issue of the credit for the second mortgage payments, we believe the interest of justice would be best served by also remanding to the trial court for taking additional evidence on this issue.

CREDIT ON ALIMONY OBLIGATION FOR PAYMENTS OF UTILITY AND INSURANCE BILLS
(Assignment of Error Number 2)
Mrs. Myers contends that the trial court erred by giving Mr. Myers credit for paying the $194.75 and $166.16 utility bills and the $95.14 house insurance bill. She asserts there is no evidence of record to show an agreement to modify the permanent alimony agreement to allow these credits.
This portion of assignment of error number 2 has merit. There is no evidence of record to show an agreement by Mrs. Myers to give Mr. Myers a credit for these payments. Mr. Myers' own testimony shows that he unilaterally made these payments without consulting Mrs. Myers. The trial court was clearly wrong when it made a factual determination to the contrary. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
This portion of this assignment of error has merit.

MRS. MYERS' ENTITLEMENT TO AN ATTORNEY FEE
(Assignment of Error Number 3)
Mrs. Myers contends that the "trial court erred in not assessing H. Vernon Myers, Jr. with attorney's fees...."
The prevailing party in litigation is not entitled to the award of an attorney fee unless it is authorized by statute or contract. Killebrew v. Abbott Laboratories, 359 So.2d 1275 (La.1978). Parties to a contract may lawfully obligate themselves for the payment of an attorney fee. Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970). The compromise agreement between the parties does not provide for an attorney fee should Mr. Myers default on his alimony payments. However, La.R.S. 9:305 provides as follows:
When the court renders judgment in an action to make past due alimony or child support executory, or in an action to enforce child visitation rights, except for good cause, the court shall award attorney fees and costs to the prevailing party.
An action to make past due alimony executory is authorized by La.C.C.P. art. 3945, which provides as follows:

When the payment of alimony under a judgment is in arrears, the party entitled thereto may proceed by contradictory motion to have the amount of past due alimony determined and made executory. On the trial of the contradictory motion, the court shall render judgment for the amount of past due alimony.

[Emphasis added.]
La.R.S. 9:305 is not applicable in this case. The permanent alimony rights and obligations of the parties herein were fixed contractually, and not by judgment of court. A contractual agreement for permanent alimony exists independently of any judgment into which it may be incorporated. Bonck, 500 So.2d at 800-801; King v. King, 390 So.2d 250 (La.App. 3rd Cir.1980), writ denied, 396 So.2d 884 (La.1981). The parties had an opportunity to contract for an attorney fee but did not do so. By reading La.R.S. 9:305 and La.C.C.P. art. 3945 in pari materia, it must be concluded that La.R.S. 9:305 is applicable only where the parties have had their alimony rights *498 and obligations fixed by a judgment of court.
This portion of the assignment of error number 3 is without merit.

MRS. MYERS' ENTITLEMENT TO TRIAL COURT COSTS
(Assignment of Error Number 3)
Because this action is being remanded to the trial court for further proceedings, the issue of assessment of trial court costs also will be remanded to the trial court. All costs in the trial court should be assessed in a final judgment on the merits. La.C.C. P. arts. 1920 and 2164.

DECREE
For the foregoing reasons, the judgment of the trial court which denied Mrs. Myers' claim for an attorney fee is affirmed; the judgment of the trial court giving Mr. Myers credit for the utility and insurance payments is reversed, and this claim for credit is denied; in all other respects, the trial court judgment is reversed, and this action is remanded to the trial court for further proceedings in accordance with the views expressed herein. The cost of this appeal is divided equally between the parties.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.
NOTES
[1] La.C.C. art. 3071 provides as follows:

A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable

C) IMMOVABLES:
 32. To Barbara:
 Residence at 214 Lynwood Drive,
 Appraised at $101,600.00
 and burdened by:
 1st. mtge. FNB $24,731.09
 2nd. mtge. FNC 27,000.00
 __________
 $51,731.09
 I propose that Vernon carry the
 $27,000.00 second mortgage without
 interest for eight years, at which time I
 will begin making monthly payments
 on the indebtedness.

of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing Its performance, although its substance may thereafter be written in a more convenient form.
[Bolding added.]
[2] At the bottom of page 6 of Mrs. Myers' proposal for the partition of the community appears the following:

APPRAISED EQUITY TO:
 VALUE VERNON BARBARA
101,600.00 -0- 49,868.91

[3] The first mortgage is in favor of the First National Bank of Houma.
[4] The second mortgage is apparently in favor of the First National Bank of St. Mary (Morgan City).
[5] At the trial of this rule, Mrs. Myers was represented by Mr. Daniel C. Vidrine and Mr. Myers was represented by Mr. Charles Gary Blaize.
[6] This case involves the modification of a contractual (compromise) agreement for permanent alimony and must be distinguished from the modification of a judgment establishing permanent alimony. See, for example, Hendrix v. Hendrix, 457 So.2d 815 (La.App. 1st Cir.1984).
[7] The five requirements necessary to state a cause of action for unjust enrichment (actio de in rem verso) are (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff. Creely v. Leisure Living, Inc., 437 So.2d 816 (La.1983).