673 So.2d 636 (1996)
DIAMOND B CONSTRUCTION COMPANY, INC.
v.
The CITY OF PLAQUEMINE.
No. 95 CA 1979.
Court of Appeal of Louisiana, First Circuit.
April 30, 1996.
*637 Randall C. Gregory, Russell W. Wray, Baton Rouge, for Plaintiff-Appellee Diamond B Construction Company, Inc.
L. Phillip Canova, Jr., Plaquemine, for Defendant-Appellant City of Plaquemine.
Before CARTER and PITCHER, JJ., and CRAIN, J. Pro Tem.[1]
PITCHER, Judge.
The City of Plaquemine appeals from the granting of a motion for summary judgment, finding that the City of Plaquemine was obligated to pay Diamond B Construction Company, Inc. the retainage amount of $133,960.64 due on a construction contract.

BACKGROUND AND PROCEDURAL HISTORY
On April 14, 1992, Diamond B Construction Company, Inc. (Diamond B) entered into a contract with the City of Plaquemine (Plaquemine) for the construction project known as the "City of Plaquemine 1992 Road and Drainage Improvement Program, F & T Job No. 91112." Pursuant to the contract, Diamond B was to "cold plane" and overlay the streets of Plaquemine.
On March 30, 1993, a document entitled "Recommendation of Acceptance" was issued by Forte & Tablada, Inc. (Forte), the engineering firm who was Plaquemine's named *638 representative under the contract. The document stated the following: "I certify that, to the best of my knowledge and belief, this project is substantially complete in accordance with the Plans and Specifications to the point where it can be used for the purpose which was intended. It is recommended that it be accepted." The document also set forth a value of $36,200.00 for a punch list of incomplete items and/or corrections. On April 23, 1993, this document was filed in the Iberville Parish Clerk of Court's office.
On July 8, 1993, Forte issued Payment Certificate No. 23, approving payment of the remaining balance of $133,960.64 due under the contract. Subsequently, Diamond B sent an invoice to Plaquemine for payment of the retainage. Following both the issuance of the "Recommendation of Acceptance" and "Payment Certificate No. 23", Plaquemine failed to pay Diamond B any of the retainage.
On October 19, 1993, Diamond B filed a petition, naming Plaquemine as defendant. In the petition, Diamond B alleged that the project had been substantially complete since June 23, 1993, and Plaquemine has refused to pay the $133,960.64 retainage. Diamond B also alleged that a clear lien certificate was filed and that final billing was sent on June 23, 1993.
On October 29, 1993, Plaquemine filed an answer and a reconventional demand, naming Diamond B as defendant. In the answer/reconventional demand, Plaquemine asserted that upon its (Plaquemine's) final inspection, as provided in § 9.10.5 of the supplementary conditions of the contract, it concluded that Diamond B did not perform the work according to the plans and specifications, and therefore, Plaquemine was entitled to withhold payment. Plaquemine further asserted that the street areas worked on by Diamond B exhibited cracks, voids and/or base failure. Plaquemine sought damages to correct, repair and/or rectify Diamond B's work. Thereafter, Diamond B filed an answer to the reconventional demand.
On November 24, 1993, Diamond B filed an amended answer to Plaquemine's reconventional demand and filed a third party demand, naming as third party defendant, Forte. In the third party demand, Diamond B alleged that the streets and construction were done in accordance with the plans and specifications of Forte, and the sole proximate cause of any defects in the roadwork would be the plans and specifications prepared by Forte. On May 24, 1994, Forte filed an answer to the third party demand.
Subsequently, Diamond B filed a motion for summary judgment, alleging that it was entitled to the retainage held by Plaquemine. A hearing was held on June 19, 1995. Following the hearing, the trial court granted the motion for summary judgment in favor of Diamond B, ordering Plaquemine to pay the retainage amount of $133,960.64 with judicial interest and attorneys fees. Plaquemine now appeals and alleges the following specifications of error:
1. The trial court erred in its application of the standard of proof in granting a summary judgment.
2. The trial court erred in its determination that there were no genuine issues of material fact concerning substantial completion.
3. The trial court erred in deciding that, as a matter of law, the actions of Forte and Tablada, Plaquemine's agent, were binding on the city and constituted an acceptance of Diamond B's work.
4. The trial court erred in holding that Plaquemine is liable for attorneys fees as a matter of law.
5. The trial court erred in construing [Plaquemine's] arguments concerning the agent's unauthorized actions as equitable arguments, when they are in fact based upon specific and unambiguous provisions of the Louisiana Civil Code.
On October 11, 1995, Diamond B filed an answer to the appeal, seeking attorneys fees incurred from this appeal and costs incurred from the trial court proceedings and this appeal.

ASSIGNMENT OF ERROR NUMBER TWO
Plaquemine contends that the trial court erred in determining that there were no genuine *639 issues of material fact concerning substantial completion.
It is well settled that the granting of a summary judgment is proper only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Lewis v. Diamond Services Corporation, 93-1150 p. 5 (La.App. 1st Cir. 5/20/94); 637 So.2d 825, 828, writ denied, 94-1638 (La. 10/14/94); 643 So.2d 159. The burden is upon the mover for summary judgment to show that no genuine issues of material fact exist, and only when reasonable minds must inevitably conclude that the mover is entitled to a judgment as a matter of law is summary judgment warranted. Ledet v. Quality Shipyards, Inc., 615 So.2d 990, 992 (La.App. 1st Cir.1993).
Summary judgments are not favored, and any reasonable doubt should be resolved against the mover. In determining whether material issues have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. O'Quinn v. Power House Services, Inc., 633 So.2d 707, 710 (La.App. 1st Cir.1993).
Specifically, Plaquemine argues that Diamond B did not substantially perform its obligations in accordance with the contract documents and is not entitled to the retainage due on the construction contract.
Contracts have the effect of law on the parties thereto and must be performed in good faith. LSA-C.C. art. 1983. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. LSA-C.C. art. 2046. Conversely, when the terms of a contract are susceptible to more than one interpretation, it is ambiguous and parol evidence may be used to show the true intent of the parties and various rules of interpretation become applicable. LSA-C.C. art. 2048.
A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. LSA-C.C. art. 2049. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA-C.C. art. 2050. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. LSA-C.C. art. 2053. In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation; however, if doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor. LSA-C.C. art. 2057. See Myers v. Myers, 532 So.2d 490 (La.App. 1st Cir.1988).
The record reflects that under the contract, Forte was the named representative for Plaquemine during the construction and until final payment. It was given the authority to inspect the project and issue a certificate of substantial completion, if it determined that the work was substantially complete. Under the contract, Plaquemine was obligated to pay Diamond B an adjusted retainage, taking into consideration the incomplete work and/or remaining corrections.
Plaquemine authorized Forte to determine substantial completion, and it is undisputed that on March 19, 1993, Forte considered the work substantially complete in the issuance of its "Recommendation of Acceptance" document. At this point, Plaquemine was obligated to pay the difference between the entire retainage due and the value of incomplete items or corrections that remained.
After reviewing the evidence, we find that it supports the conclusion that there was no genuine issue of material fact as to substantial completion. Thus, this assignment of error lacks merit.

*640 ASSIGNMENT OF ERROR NUMBER THREE
Through this assignment of error, Plaquemine contends that the trial court erred in deciding that, as a matter of law, Forte's actions were binding on Plaquemine. Plaquemine asserts that as the "owner" under the contract, Plaquemine made a final inspection and determined that the work was not performed in accordance with the plans and specifications and withheld payment. Plaquemine contends that Forte was not delegated the authority to make final approval of the project without supervision by Plaquemine.
When the words of a contract are clear, unambiguous, and lead to no absurd consequences, the contract is interpreted by the court as a matter of law. LSA-C.C. art. 2046. When a contract is to be interpreted by the court as a matter of law, a motion for summary judgment is a proper procedural vehicle to present the question to the court. Brown v. Mayfield, 488 So.2d 322 (La.App. 3rd Cir.1986).
Under the contract, § 9.10.5 of the supplementary conditions provides as follows:
If upon final inspection of the work it shall be found by the Owner that the plans, specifications, contract, or change orders for the work shall not have been fully complied with, the Owner shall, until such compliance shall have been effected or adjustments satisfactory to it shall have been made, refuse to direct final payment.
After reviewing the documents, the trial court concluded that the term "owner" in § 9.10.5 of the supplementary conditions was equivalent to "owner's representative" and entitled the owner or the owner's representative to make final inspection and withhold payment if the plans and specifications were not followed. We agree.
Section 2.1.1 of the contract defines "owner" as "the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term `Owner' means the Owner or the Owner's authorized representative". In this case, Plaquemine authorized Forte to act as its representative during construction and until final payment was due. Clearly, the term "owner" in the contract allows Plaquemine or Forte to make the final inspection and withhold payment if plans and specifications were not followed. The contract also permitted Forte to perform a final inspection, and upon finding the work to be acceptable under the contract documents, Forte was to issue a certificate for payment.
Instead of withholding payment after final inspection, Forte determined that the work was complete and issued a payment certificate on July 8, 1993. Undoubtedly, Plaquemine was to rely upon Forte's determinations on substantial completion and final completion for consistency with the contract documents. Even if Plaquemine felt that the project was substantially incomplete, Forte was still permitted to make the determination of substantial completion and final completion under the contract. Therefore, based upon Forte's determinations and issuance of Payment Certificate No. 23, Diamond B is entitled to the retainage amount of $133,960.64. Thus, this assignment of error lacks merit.[2]

*641 ASSIGNMENT OF ERROR NUMBER FOUR
Through this assignment of error, Plaquemine contends that the trial court erred in awarding Diamond B attorneys fees when Diamond B's work was not substantially complete.
Attorney[s] fees are not allowed in Louisiana except where authorized by statute or contract. Quealy v. Paine, Webber Jackson & Curtis, Inc., 475 So.2d 756, 763 (La. 1985).
LSA-R.S. 38:2191 provides, as follows:
A. All public entities shall promptly pay all obligations arising under public contracts when the obligations become due and payable under the contract. All progressive stage payments and final payments shall be paid when they respectively become due and payable under the contract.
B. Any public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorneys fees.
C. The provisions of this Section shall not be subject to waiver by contract. (Emphasis ours).
Whenever the public entity enters into a contract for the construction, alteration, or repair of any public works, the official representative of the public entity shall have recorded in the office of the recorder of mortgage, in the parish where the work has been done, an acceptance of said work or of any specified area thereof upon substantial completion of the work. LSA-R.S. 38:2241.1. The recordation of an acceptance in accordance with the provisions of this Section upon substantial completion shall be effective as an acceptance for all purposes under this Chapter. LSA-R.S. 38:2241.1.
The record does not reflect that Plaquemine made a formal, final acceptance of the work as required by LSA-R.S. 38:2191 B. In addition, the contract does not state that Forte is the official representative for the purposes of LSA-R.S. 38:2191 B. Forte, who was the authorized representative of Plaquemine under the contract, filed a "Recommendation of Acceptance" with the Iberville Parish Clerk of Court's office. In the document, Forte only "recommended that [the work] be accepted." Therefore, Diamond B did not receive formal, final acceptance, which is required before attorneys fees will be awarded. Thus, the trial court erred in awarding attorneys fees.

ASSIGNMENTS OF ERROR NUMBERS ONE AND FIVE
Because of our finding as to Assignments of Error Numbers Two and Three, we pretermit a discussion of these assignments of error.

ANSWER TO THE APPEAL
In the answer to the appeal, Diamond B contends that it is entitled to attorneys fees incurred from this appeal and costs associated with this appeal and the trial.
Given our finding in Assignment of Error Number Four, a discussion of this contention is unnecessary.

CONCLUSION
For the foregoing reasons, the trial court's judgment, awarding attorneys fees to Diamond B, is reversed. In all other respects, the trial court's judgment, granting the motion for summary judgment in favor of Diamond B, is affirmed. Costs of this appeal in the amount of $843.00 are assessed to the City of Plaquemine.
AFFIRMED IN PART; REVERSED IN PART.
CARTER, J., dissents in part for reasons attached.
*642 CARTER, Judge, dissenting in part.
I dissent from that part of the opinion, affirming the trial court's granting of summary judgment. I respectfully submit that there remain genuine issues of material fact, concerning "substantial completion" of the contract, as well as the authority of the agents (Engineers) to bind the defendant.
NOTES
[1] Judge Hillary Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] In this assignment of error, Plaquemine also argues that Forte's action of filing the recommendation of acceptance (certificate of substantial completion) was not authorized because Forte was not the official representative entitled to file this document as required under LSA-R.S. 38:2241.1.

LSA-R.S. 38:2241.1 provides, in pertinent part, as follows:
Whenever the public entity enters into a contract for the construction, alteration, or repair of any public works, in accordance with the provisions of R.S. 38:2241, the official representative of the public entity shall have recorded in the office of the recorder of mortgage, in the parish where the work has been done, an acceptance of said work or of any specified area thereof upon substantial completion of the work.... This acceptance shall not be executed except upon the recommendation of the architect or engineer of the public entity whose recommendation may be made upon completion or substantial completion of said public works within thirty days of completion of the project.... The recordation of an acceptance in accordance with the provisions of this Section upon substantial completion shall be effective as an acceptance for all purposes under this Chapter.
Although Forte's representation under the contract does not include acting as Plaquemine's official representative under LSA-R.S. 38:2241.1, the contract does not make the acceptance of Diamond B's work by Plaquemine a requirement before Plaquemine becomes obligated to pay under the contract. Further, a determination of whether Forte had authority to file the recommendation of acceptance (certificate of substantial completion) has no bearing upon Plaquemine's obligation to pay under the contract. Thus, this argument lacks merit.